## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CIVIL ACTION NO. 2:11-CV-12617 (WOB-PJK)**


**KELLY WRIGHT, JR.**                                     **PETITIONER**


**VS.**                    <u>**MEMORANDUM OPINION AND ORDER**</u>


**DAVID BERGH**                                          **RESPONDENT**

## <u>INTRODUCTION</u>

In April 2009, a jury convicted Petitioner Kelly Wright, Jr. of two counts of first-degree premeditated murder, two counts of felony murder, two counts of assault with intent to commit murder, one count of first-degree criminal sexual conduct ("CSC I"), and one count of possession of a firearm during the commission of a felony ("felony firearm"). The trial court sentenced Wright, a fourth-offense habitual offender, to: (1) concurrent sentences of life imprisonment without parole on alternative theories of first-degree premeditated murder and first-degree felony murder for each of the victims, (2) 25-45 years' imprisonment for each of the assault with intent to commit murder counts, and (3) 25-45 years' imprisonment for the CSC I count, and (4) two years' imprisonment for the felony firearm conviction.

In 2011, Wright filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Thereafter, Wright moved to stay proceedings so that he could exhaust unexhausted claims in state court, and the Court granted the motion (the "stay-and-abey order"). (Docs. 2, 4.) The Court conditioned the stay on Wright filing a motion for relief from judgment with the state

trial court within sixty days from the date of the stay-and-abey order, and subsequently filing a motion to lift the stay and an amended petition in this Court within sixty days after the conclusion of the state court proceedings. (Doc. 4.) On May 7, 2014, Wright filed a motion to lift the stay (Doc. 8), which the Court granted, (Doc. 10). Wright filed an amended petition pursuant to the Court's order, (Doc. 13), to which Respondent David Bergh ("Respondent") responded, (Doc. 14).

For the reasons set forth below, the Court will deny Wright's petition.

## FACTUAL BACKGROUND[1]

### A.   The Events Underlying Wright's Conviction.

Wright's conviction stems from events that occurred on October 21, 1987. (Doc. 15-14 at 20.) On that night, Wright and several others (including Loretta Williams, Comela Leonard, Vicki Moore, Anthony Leonard, and Wright's brother) were at a friend's apartment where they spent the evening smoking cocaine. (*Id.* at 1-2.) After midnight, Wright left the back room where the group was smoking cocaine only to return a short time later brandishing a gun and claiming that someone had stolen his brother's cocaine (his brother had been in the front room of the apartment). (*Id.* at 2.) Wright's brother then entered the room and tried to force one of the occupants, Vicki Moore, to perform oral sex on him. (*Id.*) She refused until Wright pointed a gun at her, after which she complied. (*Id.*)

Then Wright began firing his gun at the other occupants in the room. He first fired at Loretta Williams, striking her in the chest, killing her. (*Id.*) The bullet passed through her body and hit Comela Leonard in the head. (*Id.*) While she lay there, Wright shot her again, this time in

---

[1] These facts are taken primarily from the opinion of the Michigan Court of Appeals. The state court's factual determinations are entitled to a presumption of correctness on habeas review. *See* 28 U.S.C. § 2254(e)(1). While a petitioner may rebut this presumption with clear and convincing evidence, *see Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), Wright himself refers the Court to this recitation of facts. (Doc. 13 at 2.)

the face. (*Id.*) Somehow, she survived. (*Id.*) Wright then shot Anthony Leonard three times, killing him. (*Id.*) Although Wright fired at Vicki Moore, the bullet hit the bed rather than her. (*Id.*) Wright and his brother then left the apartment. (*Id.*)

After they had gone, Comela Leonard and Vicki Moore left the apartment and flagged down a nearby police officer. (*Id.*) The officer took the women to the hospital, where they were treated and statements were taken. (*Id.*)

## B. Wright is Apprehended and Interrogated—Many Years Later.

Years later, in November 2008, the police apprehended Wright on warrants from the above-described events. (Doc. 15-4, Hrg. Tr. 3/6/2009, at 8.) During the subsequent interrogation, Wright confessed, which his counsel later moved to suppress, arguing that any statements were not made voluntarily because Wright was under the influence of medication. (Doc. 15-5, Hrg. Tr. 3/19/2009, at 3-4.) The trial court held the requisite *Walker*[2] hearing and accepted testimony from both Wright and the interrogating officer.

Detective Sergeant Jeffrey Harris, a seventeen year veteran on the force, was the police officer who interrogated Wright once he arrived at the police department from the hospital. (Doc. 15-4, Hrg. Tr. 3/6/2009, at 6, 9.) Following his arrest, Wright initially received treatment at the Detroit Receiving Hospital for swelling and pain from a fractured ankle, (*id.* at 48), and so he arrived at the River Rouge Police Department several hours after being arrested, (*id.* at 9).

Although he did not personally book Wright, Harris observed as another officer booked Wright into the station. (*Id.* at 27.) During this process, the booking officer completed a health screening form, noting several observations pertaining to Wright's physical condition including

---

[2] *People v. Walker*, 132 N.W.2d 87, 91 (Mich. 1965) (establishing that when a defendant challenges the admissibility of his confession, the trial court must hear testimony regarding the circumstances of the confession outside the presence of the jury).

that Wright did not appear to be in pain or under the influence of drugs or alcohol, and the officer also asked Wright a series of questions regarding his medical condition and history, including whether Wright required the administration of medication. (*Id.* at 16-20.) Harris did not observe Wright having any difficulty understanding the questions being asked. (*Id.* at 20.)

Harris then began questioning Wright in the interrogation room. (*Id.* at 9.) It is undisputed that the interrogation lasted several hours.[3] Harris did not know that, according to Wright, when he was at the hospital, he took two Vicodin pills[4] he had on him and received one pain pill[5] from the hospital. (Doc. 15-4 at 45, 49-50.) Harris testified that generally, he would have been made aware of a suspect taking pills. (*Id.* at 45.)

Harris began the interrogation by informing Wright of his constitutional rights. (*Id.* at 10-12.) Harris testified that he never threatened Wright or made any promises in exchange for Wright's testimony, and Wright does not suggest that he did. (*Id.* at 13.) Although the interrogation was lengthy, Wright was provided with food and drink upon request, and when Wright requested a chair to prop up his foot, Harris immediately provided it to him. (*Id.* at 21, 38-39.) Harris testified that, based on his seventeen years on the force, Wright did not appear to be under the influence of any drugs or alcohol, including prescription pills. (*Id.* at 14-15.)

Wright admitted that he never asked for a lawyer at any time during the interrogation or asked that the questioning cease. (*Id.* at 54.) He never indicated that he needed medical treatment or that his physical discomfort was interfering with his ability to answer questions. (*Id.*)

---

[3] Harris testified it lasted three to three and a half hours, (*id.* at 36), while Wright testified it lasted four to five hours, (*id.* at 54). Although the interrogation was recorded, this recording is not part of the record.

[4] Wright testified he took the Vicodin in front of the Detroit police officer at the hospital prior to when a River Rouge officer took custody of him. (*Id.* at 50-52.)

[5] The trial court ultimately concluded from its review of the medical records that the pain pill provided by the hospital was merely aspirin. (Doc. 15-5 at 4.)

Additionally, Harris specifically asked Wright whether he understood why he was there and what was happening, and Wright confirmed he did. (*Id.* at 36.) Harris also surmised that Wright was a high school graduate and could read and write. (*Id.* at 44.)

However, Wright testified that the Vicodin he took caused him to hallucinate during some of the interrogation, although he admitted he never informed Harris of this. (*Id.* at 54-55.) Despite these hallucinations, which he further described as "everything spin[ning]," Wright testified he had no difficulty answering any of Harris's questions and the "spinning" did not make him uncomfortable. (*Id.* at 55, 61-62.)

After hearing the testimony and reviewing the DVD of the interrogation, the trial court denied the motion to suppress, concluding that the confession was voluntary. (Doc. 15-5, Hrg. Tr. 3/19/2009, at 4.)

## C. After a Seven Day Trial, a Jury Finds Wright Guilty as Charged.

Following trial, a jury convicted Wright of all counts charged: two counts of first-degree premeditated murder, two counts of felony murder, two counts of assault with intent to commit murder, one count of CSC I, and one count of felony firearm. The trial court sentenced Wright on April 20, 2009 to 2 years' imprisonment for the felony firearm conviction followed by concurrent sentences of life imprisonment without parole on alternative theories of first-degree premeditated murder and first-degree felony murder for each of the two victims involved; 25-45 years' imprisonment for each of the assault with intent to commit murder counts, and 25-45 years' imprisonment for the CSC I count. (Doc. 15-14 at 11-14.)

During the sentencing hearing, as the trial court pronounced its sentence for each of the counts, counsel for both the prosecution and Mr. Wright identified perceived errors made by the trial court. (Doc. 15-13 at 13, 15.) At each objection, the trial court engaged with counsel and

corrected or explained the identified issues. As pertinent to Wright's Petition, counsel suggested that the trial court's initial pronouncement suggested that the judge imposed four life sentences against Wright. (15-13 at 15-16.) However, the prosecution engaged with the trial court, explaining that the commitment order needed to specify not four life sentences, but rather two life sentences supported by two alternative theories—premeditated murder and felony murder. (*Id.* at 16.) The trial court agreed, (*id.*), and the judgment of sentence specifically reads "[n]atural life sentence for [counts] 1-4 supported by two theories, premeditated and felony murder." (Doc. 15-14 at 11-14.)

### D. Wright Appeals and Collaterally Attacks the Judgment.

Wright appealed his conviction and sentence, raising two arguments before the Michigan Court of Appeals. First, he argued that the trial court erred by failing to suppress the statements made during his interrogation. (*See* Defendant's Appellate Brief, Doc. 1 at 45.) Second, he argued that the trial court violated the Double Jeopardy Clause by imposing two life sentences for each of the murder counts. (*See id.* at 51.) The appellate court rejected both of these arguments and affirmed the conviction and sentence. (*See* Doc. 15-14 at 1.)

With regard to Wright's first argument, after *de novo* review, the appellate court concluded that the confession was voluntary. (*Id.* at 6.) As to Wright's second argument, the appellate court reviewed the sentence/commitment and found that it reflected one sentence supported by two theories. (*Id.* at 9.) Accordingly, it found no error and affirmed. (*Id.*) The Michigan Supreme Court denied leave to appeal. (Doc. 15-15 at 1.)

In June of 2011, Wright filed his initial habeas petition in this Court. (Doc. 1.) In this petition, he raised the same two issues he presented on appeal to the Michigan state courts. (*See*

*id.*)  He also filed a motion to stay proceedings in order to exhaust additional claims in the state courts.  (Doc. 2.)  This Court granted the motion.  (Doc. 4.)

Thereafter, Wright filed a Motion for Relief from Judgment in the Michigan trial court. (*See* Doc. 15-16 at 1.)  In this motion, Wright argued that trial counsel was ineffective because she: (1) failed to consult with him prior to preliminary examination; (2) failed to investigate alternative affirmative defenses; (3) failed to consult with Wright in advance of trial; (4) failed to provide discovery materials until the end of trial, despite Wright's earlier requests; (5) failed to raise the issue of Comela Leonard commenting on his guilt during her testimony; (6) failed to properly articulate the basis for the directed verdict motion; (7) argued that Wright could be convicted of two counts of felony murder and the underlying felonies, when case law provided the opposite; and (8) failed to explore inconsistencies in the ballistic evidence.  (*Id.* at 6-7.)

Wright also argued that he was denied a fair trial when the prosecutor used leading questions and that he was denied his right to confrontation in violation of the Fifth and Sixth Amendments when the medical examiner was permitted to testify from an unproduced medical examiner's findings.  (*Id.* at 7.)  Wright further argued that he was denied a proper felony murder instruction and that he was denied due process and a fair trial when one of the witnesses was permitted to be in the courtroom during other witnesses' testimony.  (*Id.* at 7-8.)  Finally, Wright argued that he was denied effective assistance of appellate counsel.  (*Id.* at 8.)  In May 2012, Wright filed a supplemental motion, making additional arguments and citing additional authority for the claims raised in his initial motion.  (Doc. 15-17.)

The Michigan trial court denied Wright's motion.  (Doc. 15-18.)  The trial court recognized that, under Michigan Court Rule 6.508(D)(3), Wright must establish his entitlement to relief:

> The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . (3) alleges grounds

for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief.

(*Id.* at 2)(quoting Mich. Ct. R. 6.508(D)).

That court acknowledged that all of Wright's claims could have been raised on direct appeal, and so it analyzed whether Wright established the requisite "good cause" for failing to raise them on appeal and "actual prejudice" from the "alleged irregularities" supporting his claim. (*Id.*) The court concluded Wright did not carry his burden.

The trial court acknowledged that Wright could show "good cause" by establishing ineffective assistance of appellate counsel and proceeded to analyze that claim. (*Id.* at 2-3.) The court concluded that Wright could not show ineffective assistance of appellate counsel because appellate counsel is permitted to "winnow out" weaker arguments to focus on arguments more likely to prevail on appeal. (*Id.* at 3.) The trial court found that, in light of the evidence against Wright, the issues raised in his Motion for Relief of Judgment would likely not have prevailed even if raised on appeal. (*Id.* at 5.) Accordingly, Wright failed to show that appellate counsel rendered ineffective assistance and so he did not establish "good cause" as required under Michigan Court Rule 6.508(D)(3). (*Id.*)

Wright next filed a delayed application for leave to appeal in the Michigan Court of Appeals, which that court denied because it concluded he failed to establish entitlement to relief under Michigan Court Rule 6.508(D). (Doc. 15-19.) Wright then filed for leave to appeal to the Michigan Supreme Court, which also denied relief under Michigan Court Rule 6.508(D). (Doc. 15-20.) The Michigan Supreme Court issued that order on February 28, 2014. (*Id.*)

On May 7, 2014, Wright asked this Court to lift the stay, but he did not file an amended petition as ordered by this Court. (Doc. 8.) This Court lifted the stay and ordered Wright to file an amended petition.[6] (Doc. 10.)

Wright filed an Amended Petition, (Doc. 13), and Respondent filed its response, (Doc. 14).

## **DISCUSSION**

After careful review of Wright's Amended Petition, and for the reasons set forth below, the Court will deny Wright's requested relief. In Wright's amended petition, he lists eight claims for relief, which he entitles: (1) failure to suppress incriminating statements, (2) Double Jeopardy, (3) ineffective assistance of trial counsel, (4) fair trial issues, (5) confrontation violation, (6) jury instructions, (7) ineffective assistance of appellate counsel, and (8) denial of access to court records. (Doc. 13.) However, Wright immediately concedes that claims 4, 5, and 8 should be dismissed, and so the Court will not consider them.[7]

First, the Court declines Respondent's invitation to deny Wright's petition because he failed to strictly comply with the Court's stay-and-abey order. Although Wright was noncompliant with the timetable set forth in the Court's stay-and-abey order, his delinquency was short (a mere four days), and his claims fail for other reasons. Accordingly, the Court will not deny Wright's petition on this basis.

---

[6] Because the Court could not determine whether Wright had complied with the requirements for reopening set forth in its previous order, the Court lifted that claims subject to Respondent's right to challenge Wright's compliance with the previous order. (*Id.*)

[7] In his reply brief, Wright attempts to resurrect Claim 5. Having already conceded this claim, Wright cannot, in his reply, argue it on the merits. *See Thomas v. Kelly*, No. 3:10-CV-00777, 2013 WL 2338081, *8 (N.D. Ohio May 28, 2013) (recognizing that claims raised in a reply brief are not properly before the court); *Burns v. Birkett*, No. 2:06-cv-10851-DT, 2007 WL 2318740, at *5 n.2 (E.D. Mich. Aug. 9, 2007) (same). However, for the reasons discussed in Section C below, this claim is procedurally defaulted.

Second, Wright is not entitled to habeas relief on the two claims he raised on direct appeal (Claims 1 and 2) and his ineffective assistance of appellate counsel claim (Claim 7). The Michigan courts considered the merits of his involuntary confession and Double Jeopardy claims on direct appeal and concluded that Wright's rights had not been violated. The Michigan appellate court similarly examined Wright's claim of ineffective assistance of appellate counsel in analyzing whether he had shown good cause under the Michigan local rules so that the court could consider the claims he asserted in his Motion for Relief from Judgment. Concluding that Wright failed to demonstrate ineffective assistance of appellate counsel and thus good cause, that court refused to consider the merits of Wright's ineffective assistance of counsel claims raised in the Motion for Relief from Judgment. The decisions issued by the Michigan state courts are not contrary to or an unreasonable application of federal law. As such, this Court cannot award Wright the habeas relief he seeks.

Third, as held by the Michigan state courts, Wright has procedurally defaulted on the remainder of his claims (Claims 3 and 6) because he failed to raise them on direct appeal. Because the state courts denied relief on procedural grounds, and this procedural ground is an adequate and independent basis for relief, this Court cannot grant Wright habeas relief on the remaining claims.

Finally, because Wright's claims have no merit, the Court will deny Wright's request for counsel and an evidentiary hearing, and it will not issue a certificate of appealability.

## A.     The Court Will Not Dismiss Wright's Petition Solely Because Wright Did Not Comply with the Court's Stay-and-Abey Order.

Respondent asks this Court to deny Wright's requested habeas relief because he did not comply with the Court's stay-and-abey order. (Doc. 14 at 19-20.) When this Court granted Wright's motion to stay, it ordered that he file a motion for relief from judgment in the state court within sixty days and then, within sixty days after he had exhausted his state court claims, file a

motion in federal court to reopen, along with an amended petition. (Doc. 4 at 4.) Respondent contends that the state court review was completed on February 28, 2014, yet Wright did not sign his motion to reopen the case in federal court until May 3, 2014—rendering Wright four days late. (Doc. 14 at 20.) Respondent further points out that Wright failed to file an amended petition with his motion to reopen, as the Court previously ordered. (*Id.*)

There can be no dispute that Wright failed to comply with the time limits provided by this Court in its order, as he filed his motion to reopen outside of the sixty day period provided by the Court. The Court's order specifically conditioned the stay on Wright's compliance with the timelines set forth in the Court's order. (Doc. 4 at 3-4) (noting that if the conditions of the stay are not met, it may be vacated and ordering Wright to file "a motion to lift the stay and amended petition in this Court within sixty days after the conclusion of the state court proceedings"). Accordingly, this Court can dismiss Wright's Petition. *See McMurray v. Scutt*, 136 F. App'x 815, 817 (6th Cir. 2005); *Lang v. Mackie*, No. 2:08-cv-12621, 2013 WL 1914247, *4 (E.D. Mich. May 8, 2013). However, because Wright's claims fail on other grounds, the Court will not dismiss his Petition because of its mere untimeliness.

**B.     Wright's Claims 1, 2, and 7 Fail Because The State Courts' Decisions Were Not "Contrary To" Nor Did They Involve An "Unreasonable Application" of Clearly Established Federal Law.**

In reviewing Wright's petition, this Court is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). So, this Court cannot grant Wright's habeas petition as to any claim adjudicated by the Michigan courts on the merits unless that adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The source of "clearly established federal law" is limited to those cases decided by the United States Supreme Court, and specifically only the holdings—not the dicta—of those cases. *See id.* When considering whether the federal law is clearly established, this Court may not rely on the decisions of the lower federal courts, *Lopez v. Smith*, 135 S. Ct. 1, 2 (2014), or any Supreme Court cases decided after the last adjudication of the merits by the state court, *Greene v. Fisher*, 565 U.S. 34, 44 (2011). As such, this Court is limited to the legal landscape as it would have appeared to the Michigan state courts at the time of their adjudication. *See id.*

Furthermore, the "contrary to" and "unreasonable application" clauses of section 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "A state court's decision is 'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Lewis v. Curtain*, 632 F. App'x 788, 792 (6th Cir. 2015) (quoting *Williams*, 529 U.S. at 405–06). "A state court's decision is an 'unreasonable application' of clearly established federal law if it 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' or 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Id.* (quoting *Williams*, 529 U.S. at 407). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or

erroneous." *Id.* (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

1. **Wright is not entitled to relief on his claim that his confession was involuntary and thus should have been suppressed by the state court (Claim 1).**

Wright contends that the trial court improperly refused to suppress his incriminating statements made to the police after his arrest. It is well-established that any confession must be voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). Although there are "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, [that] are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment," *Miller v. Fenton*, 474 U.S. 104, 109 (1985), the ultimate question for the Court is "whether a defendant's will was overborne at the time he confessed," *Reck v. Pate*, 367 U.S. 433, 440 (1961). To answer this question, "courts must consider the totality of the circumstances surrounding the confession, including the characteristics of the defendant and the details of the interrogation." *Lewis*, 632 F. App'x at 794 (citing *Schneckloth*, 412 U.S. at 226). Factors to be considered when analyzing the totality of the circumstances include the defendant's age, education, and intelligence; whether he was informed of his *Miranda* rights; the length of the detention; the nature and length of the questioning; and any physical punishment, such as denial of food or sleep. *Schneckloth*, 412 U.S. at 226. No single factor determines the voluntariness of a confession. *Id.*

Moreover, "[a] suspect's state of mind, standing alone, cannot render a statement involuntary." *Phillips v. Prelesnik*, No. 1:13-cv-609, 2017 WL 393309, *5 (W.D. Mich. Jan. 30, 2017). *See also Colorado v. Connelly*, 479 U.S. 157, 165 (1986) (recognizing that, although an individual's "mental condition is surely relevant to an individual's susceptibility to police coercion," an individual's "state of mind [alone] cannot conclude the due process inquiry").

Instead, "coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary." *Phillips*, 2017 WL 393309, at *5 (citing *Connelly*, 479 U.S. at 163-67). And the coercive conduct must cause the confession. *Connelly*, 479 U.S. at 165.

The Michigan Court of Appeals addressed Wright's argument that his confession was involuntary and that the trial court wrongly refused to suppress it. (Doc. 15-14 at 6-7.) It carefully considered the totality of the circumstances, examining each of the pertinent factors, and it found that Wright's confession was "made without intimidation, coercion, or deception." That court noted that Wright was fifty-eight years old; a high school graduate; could read and write; was informed of his *Miranda* rights and indicated he understood them; and agreed to speak with the officer, never requesting a lawyer or a break. (Doc. 15-14 at 6.) Wright never asked to use the facilities, and when he indicated he wanted to prop his leg up, the officer provided him with a chair. (Doc. 15-4 at 21, 38-39, 54; Doc. 15-14 at 6.) Tellingly, Wright never asked to stop the interrogation due to any pain or discomfort. (Doc. 15-4 at 54; Doc. 15-14 at 6.) All of these facts are supported by the record. (*See* Doc. 15-4 at 10-12, 21, 38-39, 44, 54; Doc. 15-14 at 6.)

Although the Michigan Court of Appeals acknowledged Wright's testimony that he had taken two Vicodin, which caused him to hallucinate, it emphasized that Wright admitted the hallucinations did not make him uncomfortable and further admitted that he had no difficulty answering any questions. (Doc. 15-14 at 6.) That court recognized that Wright's own admissions supported Officer Harris's testimony that Wright did not appear to be under the influence and was instead aware of what was going on. (*Id.*)

Based on the totality of the circumstances in this case, the decision of the Michigan Court of Appeals that Wright's confession was voluntary was not contrary to nor an objectively unreasonable application of clearly established federal law.

Wright's arguments to this Court do not alter this conclusion. Seeking to convince this Court that his confession was involuntary, Wright again points to the "hallucinations" he allegedly experienced during the interrogation as a result of the Vicodin he took at the hospital and to the fact that he was in pain. This Court finds neither fact persuasive as to the voluntariness of Wright's confession. There is no evidence that either the Vicodin or the pain negatively affected Wright or caused him to make any statement involuntarily.

In fact, the evidence establishes just the opposite. Harris, who observed Wright first hand, testified that, based on his seventeen years on the job, Wright was not acting under the influence of anything and that, to the contrary, Wright acted as though he understood what was happening and was fully coherent. (Doc. 15-4 at 14, 36.) Most tellingly, Wright himself admitted that the "hallucinations," which he described as "spinning," did not make him uncomfortable, ***nor did they interfere with his ability to answer any questions***. (*Id.* at 55, 61.) And Wright never asked that the interview cease, nor did he indicate that any physical discomfort he experienced interfered with his ability to answer questions. (*Id.* at 54.) Accordingly, Wright's arguments fail, and the Michigan court's conclusion that Wright's "hallucinations" and pain did not render Wright's confession involuntary is not an objectively unreasonable application of federal law. *See Phillips*, 2017 WL393309, at *7-8 (agreeing with the state court's conclusion that petitioner's confession was voluntary when the petitioner had not taken his regular medication for depression for several days because the detective testified the lack of medication did not appear to affect the petitioner's condition, petitioner never requested assistance during the interrogation due to his physical condition, and he had not taken his medication for periods before and had been able to function); *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (denying habeas relief and concluding that the petitioner's confession was voluntary when, although the petitioner was injured and in some

discomfort, there was no evidence that his mental faculties were impaired, his level of discomfort did not rise to the level recognized by previous Supreme Court cases as requiring relief, and there was no evidence of police coercion), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010).

Wright further contends that the Michigan courts erred by ignoring his subjective comprehension of the interrogation and instead wrongly focusing on the objective circumstances of the interrogation. However, that is precisely what the law instructs a court to do. It is well-settled that an individual's state of mind alone cannot end the due process analysis. *Connelly*, 479 U.S. at 165. To the contrary, as the Supreme Court in *Connelly* recognized, coercive police conduct must be the cause of an individual's involuntary confession. *Id.* at 165-66. But here, Wright does not even expressly allege police coercion. Instead, he points to the fact that he was on Vicodin and that his leg hurt. Yet he admits he never informed the officer that he was on Vicodin or indicated that his leg discomfort was interfering with his ability to answer questions. (Doc. 15-4 at 54-55.) Indeed, he admits he never asked that the interview stop and later denied any interference with his ability to answer questions. (*Id.*)

So, Wright's theory of coercion boils down to the fact that Harris did not stop the interrogation because of facts about which he did not know. This theory quickly breaks down because, obviously, if the officer did not know about Wright's hallucinations or alleged pain, he could not have used them in an attempt to coerce Wright. As such, Wright simply does not allege police coercion rendered his statements involuntary, which is plainly required for habeas relief to be granted. *See Connelly*, 479 U.S. at 159 (denying habeas relief when the petitioner confessed to a murder without any coercive conduct by the police, even though subjectively, he was suffering from a mental condition that prompted the confession).

Finally, in passing, Wright appears to argue that he was sleep deprived at the time of his interrogation and that this lack of sleep somehow made his confession involuntary. (*See* 15-14 at 15) (arguing in his appellate brief that his confession was involuntary because "[a]lthough defendant was not deprived of food or water, he was injured, in ill health, and all indications were that he had not slept for at least 18 hours"). Notably, however, Wright was not questioned for all eighteen hours. In fact, Wright claims that, at most, his interrogation lasted "closer to five hours," and admits that he never asked that the interrogation cease or that he take a break. (*Id.* at 54.) Moreover, although Wright was at a hospital for several hours prior to the interrogation, the paramount consideration is whether the officers caused the sleep deprivation through coercive tactics. *See Lewis*, 632 F. App'x at 794 (denying habeas relief when, although the petitioner had only two hours of sleep the night before, he was not questioned overnight, the officers did not contribute to the sleep deprivation, and he voluntarily appeared for the interview).

For these reasons, habeas relief cannot be granted. Even "if there is room for reasonable debate on the issue, the state court's decision to align itself with one side of the argument is necessarily beyond this court's power to remedy under § 2254, even if it turns out to be wrong." *Id.* at 795 (quoting *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014)). Because it was a reasonable application of federal law for the Michigan Court of Appeals to hold that Wright's confession was voluntary, under AEDPA review, Wright's claim must be denied.

### 2. Wright is not entitled to relief on his Double Jeopardy claim (Claim 2).

In his amended petition, Wright argues that "multiple convictions and sentences involving both complainants punished him twice for the same offense contrary to the Double Jeopardy Clauses of Federal and State constitutions. . . . Mr. Wright contends that assigned counsel misconstrued this claim because multiple theories of prosecution, for purposes of a judgment of

sentence/commitment order, did not exist until 2008 and cannot extend to multiple punishments sustained in 1987." (Doc. 13 at 5.) Wright refers the Court to his appellate brief and his Motion for Relief from Judgment and Supplemental Motion for further clarification. Wright's appellate brief argues that his sentence is constitutionally unsound because he "was found guilty of both felony murder and first degree murder as to both Ms. Williams and Mr. Leonard. He was sentenced on both convictions, and thus is serving two sentences for one homicide." (Doc. 15-14 at 38.)

Wright appears to be making two distinct Double Jeopardy arguments. First, he argues that he was wrongly punished twice for the same crime, in that he received life sentence for both murders but under two counts: felony murder and premeditated murder, thus resulting in four sentences for only two crimes. This argument was presented to and adjudicated by the state courts, and thus will be discussed immediately below. Second, he appears to make an ineffective assistance of counsel claim, in that Wright claims that his counsel misconstrued the Double Jeopardy argument to be made, and that he should have argued against the trial court's retroactive application of Michigan precedent. This argument was not presented to the Michigan Court of Appeals on direct review, but it was encompassed in Wright's Motion for Relief from Judgment and Supplemental Motion as part of his ineffective assistance of appellate counsel claim. Accordingly, the merits of Wright's second argument will be addressed in Section 3.v. as part of his ineffective assistance of appellate counsel claim.

 "The Double Jeopardy Clause protects against . . . multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)) (internal quotation marks omitted).

The Michigan Court of Appeals rejected on appeal Wright's argument that he was punished twice for the same crime. (Doc. 15-14 at 8.) That court recognized the trial court's initial

18

imposition of sentences, and then it recognized that the prosecutor indicated that "the sentencing should reflect that Wright was being sentenced 'for each death to natural life under two theories.'" (*Id.*) That court then acknowledged the prosecutor's additional explanation:

> [s]o the commitment order reads he gets on counts one and two one sentence of natural life supported by premeditation theory and felony murder theory. . . . So there won't be four natural lifes [sic] on there even though that's what the record reflects. The commitment will read as to three and four one natural life under both theories.

(*Id.*) That court then concluded "[o]ur review of the judgment of sentence/commitment order reveals that it does clearly reflect one conviction and sentence supported by the two theories of premeditated murder and felony murder for both victims. Therefore, Wright's request for a remand to correct the judgment of sentence is without merit." (*Id.* at 9.)

This decision is not an objectively unreasonable application of, nor is it contrary to, federal law. Quite simply, Wright's Double Jeopardy rights were not implicated because he was sentenced for one crime (murder) per victim, and this crime was supported by two alternative theories for each victim (premeditated and felony murder). The sentence/commitment order is clear on this point. (Doc. 15-14 at 11-14) (stating "[n]atural life sentence for [counts] 1-4 supported by two theories, premeditated and felony murder"). As a matter of well-settled law, because he received only one punishment for one crime, no Double Jeopardy violation occurred. *See Carr v. Warren*, No. 05-CV-73763-DT, 2007 WL 2389816, at *15–16 (E.D. Mich. July 9, 2007) (denying habeas relief on Double Jeopardy grounds for sentence supported by alternative theories of first-degree premeditated murder and first-degree felony murder); *Harris v. Wolfenbarger*, No. 05-CV-74316, 2007 WL 2421545, at *6 (E.D. Mich. Aug. 27, 2007) (same). Therefore, the Michigan court's decision was not contrary to nor an unreasonable application of clearly established federal law, and Wright is not entitled to habeas relief.

### 3. Wright's ineffective assistance of appellate counsel claims fail.

Wright argues that he was denied effective assistance of appellate counsel because his appellate attorney failed to raise "several meritorious issues . . . on direct appeal." (Doc. 13 at 7.) To prove his ineffective assistance of appellate counsel claim, Wright must show that (1) considering all circumstances, appellate counsel's performance was so deficient that the attorney was not functioning as counsel as guaranteed by the Sixth Amendment and (2) that counsel's performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). To satisfy the first prong, the "performance" prong, Wright must overcome the strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id.* at 687. Wright must show that counsel's behavior cannot be attributed to sound trial strategy. *Id.* at 689. To establish the second prong, the "prejudice" prong, Wright must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Because Wright claims that his appellate counsel was ineffective, he must show that "but for counsel's deficient performance, he would have prevailed on appeal." *Riley v. Jones*, 476 F. Supp. 2d 696, 709 (E.D. Mich. 2007).

Importantly, appellate counsel is not required to raise every nonfrivolous claim urged by his client. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). To the contrary, "[t]he hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). Only when the issues counsel chose not to pursue on appeal are clearly stronger than those actually presented will the presumption against effective assistance of appellate counsel be overcome. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Thus, it is difficult to show that an appellate attorney

has violated the performance prong of the *Strickland* standard.  *See Caver*, 349 F.3d at 348 (citing *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

The Michigan trial court addressed Wright's ineffective assistance of counsel claim in its decision denying Wright's Motion for Relief from Judgment when analyzing whether Wright established good cause for failure to raise his claims on direct appeal as required by Michigan Court Rule 6.508(D)(3).  (Doc. 15-18 at 2-5.)  In its decision, the Michigan court recognized that ineffective assistance of counsel could constitute the "good cause" required to excuse Wright's failure to raise his claims on direct appeal.  (*Id.* at 2.)  That court then recited the *Strickland* standard and analyzed whether Wright demonstrated ineffective assistance of counsel, concluding that he did not.  (*Id.* at 3-5.)  The court acknowledged Wright's contention that the issues raised by counsel on appeal "pale[d] in comparison" to those issues he raised in his Motion for Relief from Judgment, but then noted that appellate counsel is permitted to "winnow out weaker arguments."  (*Id.* at 3.)  The court then noted that counsel raised on appeal the issue of Wright's purported involuntary confession, which the appeals court ultimately rejected.  (*Id.* at 3-4.)  The court concluded that, with all the evidence against Wright, including his voluntary confession, none of the other issues identified in his Motion for Relief from Judgment would have prevailed on direct appeal.  (*Id.* at 5.)  As such, Wright failed to overcome the presumption that appellate counsel's decisions were sound strategy.  (*Id.*)

The Michigan court's decision is not contrary to nor an objectively unreasonable application of federal law.  Having examined each of these claims, and as set forth below, the Court agrees that appellate counsel's decision not to raise them on appeal did not violate the *Strickland* standard because these issues are not "clearly stronger than issues that counsel did present."  *Caver*, 349 F.3d at 348 (internal quotation marks omitted) (quoting *Robbins*, 529 U.S.

at 289). Wright simply cannot prove that "but for counsel's deficient performance, he would have prevailed on appeal." *Riley*, 476 F. Supp. 2d at 709.

### a. Ineffective assistance of trial counsel

Wright cannot satisfy his burden to show that appellate counsel was ineffective for failing to argue on appeal that Wright's trial counsel was ineffective. Wright identifies no less than eight ways in which trial counsel was allegedly ineffective. As discussed below, none of Wright's contentions have merit, and so appellate counsel was not ineffective for raising them on appeal.

### i. Failure to keep Wright informed and/or to consult with him.

Wright argues that trial counsel failed to meet with him at any time before or during the trial or to consult with him about trial strategy. It is not clear that Wright has alleged a constitutional violation, as the Sixth Amendment focuses not on the "accused's relationship with his lawyer," but rather the "adversarial process." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Some habeas courts have sometimes found a constitutional violation when counsel has met with their client for only a short period, but others have not. *See Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003) (discussing habeas courts' treatment of such claims). However, Wright offers no evidence that trial counsel in fact never met with him or contends that he wanted to or tried to meet with counsel and she declined. He provides no independent evidence of this alleged failure to consult—not even an affidavit. *See id.* (expressing concern when a petitioner failed to proffer any substantiating evidence of his claim that counsel met with him for only an hour).

Even if the Court assumes for purposes of this argument that Wright's allegations are true, Wright has failed to establish prejudice. He offers no explanation as to what information he could have offered that would have affected the outcome of the trial, even if counsel had met with him.

As such, Wright has failed to establish prejudice, *see id.*, and so appellate counsel was not ineffective for not raising this issue on appeal.

### ii. Failure to provide Wright with discovery materials until the end of trial.

Next, Wright argues that counsel was ineffective for failing to provide Wright with his discovery materials until the conclusion of the trial, even though Wright requested them earlier. First, Wright fails to show that counsel had any obligation to share the discovery materials with him before or during trial. *See White v. Cason*, No. 04-CV-75071, 2006 WL 763194, at *11 (E.D. Mich. Mar. 24, 2006) (recognizing that there is no constitutional duty to share discovery documents with a petitioner). Second, Wright offers no explanation about what exculpatory information the discovery materials might have included or how not having them until the conclusion of the trial was prejudicial to him. Therefore, he fails to establish his ineffective assistance of counsel claim. *See Hamilton v. Romanowski*, No. 5:10-CV-14392, 2012 WL 2224450, at *10 (E.D. Mich. May 7, 2012) (concluding that a petitioner failed to carry his burden of proving ineffective assistance of counsel when he did not explain how the discovery material would have affected his decisions), *report and recommendation adopted*, No. 10-14392, 2012 WL 2198790 (E.D. Mich. June 15, 2012). *See also Gaughan v. United States,* No. 2:02–cv–169, 2006 WL 2798155, *13 (N.D. Ind. Sept. 28, 2006) (concluding that counsel had no duty to share discovery with the petitioner and so he failed to establish an ineffective assistance of counsel claim on this basis); *Ramsden v. Warden, Dept. of Corrections,* No. 02–138, 2003 WL 356031,*10 (D. Me. Feb. 14, 2003) (same), *report and recommendation adopted* 2003 WL 1960592 (D. Me. April 24, 2003).

### iii.    Failure to pursue certain affirmative defenses.

Wright next contends that trial counsel failed to investigate and raise certain affirmative defenses, including diminished capacity, voluntary intoxication, and insanity.  None of these defenses were viable for Wright, and so appellate counsel was not ineffective for not raising these issues on appeal.

To begin, the affirmative defense of diminished capacity was abolished in 2001, and so the defense was not available to Wright.  *People v. Carpenter*, 627 N.W.2d 276 (Mich. 2001).  The fact that the diminished capacity defense was recognized at the time Wright committed the underlying offenses is irrelevant because the Supreme Court has specifically approved the retroactive application of the case abolishing this defense.  *Metrish v. Lancaster*, 569 U.S. 351 (2013).  In that case, the petitioner raised a diminished capacity defense during his first trial, but the jury was unconvinced and convicted him.  *Id.* at 355.  The petitioner later obtained federal habeas relief and was granted a second trial.  *Id.*  By the time of this retrial, the Michigan Supreme Court had issued the *Carpenter* decision, rejecting the diminished capacity defense.  *Id.* at 356.  Accordingly, the trial judge did not permit petitioner to raise this defense on retrial, despite the fact that, at the time he committed the underlying offense, the defense was accepted.  *Id.*  The Supreme Court concluded that the trial court's decision did not violate the petitioner's due process rights, affirming the retroactive application of *Carpenter*.  *Id.* at 368.  Because at the time of Wright's trial in 2009 the defense was no longer available, appellate counsel was not ineffective for not raising this issue on appeal.

Next, "[a] defense of intoxication is only proper if the facts of the case could allow the jury to conclude that the defendant's intoxication was so great that the defendant was unable to form the necessary intent." *People v. Mills,* 537 N.W.2d 909, 920 (Mich. 1995) (citing *People v. Savoie*,

349 N.W.2d 139 (Mich. 1984)), *modified on other grounds,* 539 N.W.2d 504 (Mich. 1995). There is no evidence in the record that Wright was intoxicated when he committed the underlying crimes, nor does he actually aver as much in his Petition. Moreover, "federal courts have rejected ineffective assistance of counsel claims based on an attorney's failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful." *Charleston v. Woods*, No. 4:16-12696, 2018 WL 339719, at *12 (E.D. Mich. Jan. 9, 2018) (collecting cases), *appeal filed*, No. 18-1126 (Feb. 2, 2018). Therefore, appellate counsel was not ineffective for not raising this issue on appeal.

Finally, in Michigan, the insanity defense exists to excuse a defendant who "was legally insane when he or she committed the acts constituting the offense." Mich. Comp. Laws § 768.21a(1). Here, Wright does not contend that he is in any way suffering from a mental illness that could have (or did) affect his capacity at the time of the crime, and he certainly has not proffered any medical evidence to support such a condition. Therefore, he fails to prove that counsel was ineffective for not raising the insanity defense. *See Weston v. Prelesnik*, No. 5:06-CV-206, 2009 WL 5578885, at *8 (W.D. Mich. Nov. 12, 2009) (rejecting petitioner's ineffective assistance of counsel claim based on counsel's decision not to raise the insanity defense (among others) when petitioner provided no evidence that he was in any way insane), *report and recommendation adopted*, No. 5:06-CV-206, 2010 WL 775581 (W.D. Mich. Mar. 2, 2010); *Kissner v. Palmer*, 826 F.3d 898, 903 (6th Cir. 2016) (finding no ineffective assistance of counsel because petitioner provided no evidence of any mental illness affecting him at the time of the underlying offense), *cert. denied sub nom. Kissner v. Harry*, 137 S. Ct. 1081 (2017), *reh'g denied*, 137 S. Ct. 2112 (2017).

Because these defenses were either legally unavailable or without any record evidence to support them, appellate counsel was not ineffective for not raising these issues on appeal, as none were clearly stronger than those issues he did raise.

### iv. Failure to adequately argue the directed verdict motion.

Next, Wright argues that appellate counsel was ineffective for failing to raise on appeal that trial counsel inadequately argued the directed verdict motion. Wright contends that trial counsel did not adequately challenge the discrepancies between two witnesses' testimony and that trial counsel focused her argument on the prong of the felony murder charge that was conclusively established. Specifically, Wright takes issue with the fact that counsel challenged the "in perpetuation of a felony" prong, and Wright contends she should have focused on whether the evidence established that the predicate felony even occurred, which he argues was weak because the witnesses' testimony was inconsistent and the prosecution had to elicit the testimony as to this felony through leading questions.[8] Wright's argument is, in its simplest terms, a dispute about where the prosecution's case was the most vulnerable, and Wright disagrees with his counsel's opinion. Thus, Wright asks this Court to engage in the type of second-guessing that the Supreme Court has expressly forbidden. *See Strickland*, 466 U.S. at 689 (noting that courts must assess attorney performance through counsel's perspective at the time—not through hindsight or second-guessing).

---

[8] Under Michigan law, "the elements of felony murder include (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of specified felonies." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines,* 597 N.W.2d 130, 136 (1999)). Trial counsel argued that the evidence did not show that the murder was committed during the perpetration of the predicate felony (CSC I). Wright contends that there were vulnerabilities in the evidence supporting whether the predicate felony was committed at all.

Moreover, Wright has not demonstrated that he was otherwise entitled to a directed verdict. Even if counsel had challenged the existence of the predicate felony, both witnesses did ultimately testify that it occurred, regardless of how the prosecution elicited the testimony. Thus, following Wright's argument, counsel's argument would have necessarily had to be that the testimony was false. Such an argument ventures into the credibility of the witnesses, which a trial court is prohibited from considering on a directed verdict motion. *See People v. Schultz*, 635 N.W.2d 491, 496 (Mich. 2001) (recognizing that "it is not permissible for a trial court to determine the credibility of witnesses in deciding a motion for directed verdict of acquittal, no matter how inconsistent or vague that testimony might be" (*quoting People v. Mehall*, 557 N.W.2d 110 (Mich. 1997))). A determination of the witness' credibility is reserved for the jury based on evidence in the record—foreclosing a directed verdict. Therefore, appellate counsel was not ineffective for refusing to raise the argument on appeal.

> **v.** **Failure to argue a Double Jeopardy violation when the law at the time of the underlying offenses precluded conviction of felony murder and the predicate felony offense.**

Wright next argues that his counsel was ineffective for arguing that he could be convicted of felony murder and the underlying felony when the case law at the time of the offense precluded such a conviction. (Doc. 15-17.) Wright also appears to argue that appellate counsel was ineffective for failing to identify the issue and raise it on appeal. (Doc. 13 at 5.) As the Court understands this argument, Wright argues that his counsel wrongly accepted the law of *People v. Ream*, 750 N.W.2d 536 (Mich. 2008), decided in 2008, which held that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not violate the Double Jeopardy Clause if each offense has an element that the other does not. Wright argues that the law in effect at the time the offenses occurred controlled whether the convictions and sentences

violated the Double Jeopardy Clause, relying on *People v. Wilder*, 308 N.W.2d 112 (Mich. 1981) and *People v. Robideau*, 355 N.W.2d 592 (Mich. 1984), which held that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony violated the Double Jeopardy Clause.

Wright's claim must be denied. Assuming for purposes of this analysis that Wright states a colorable claim that counsel were ineffective for failing to argue that imposition of the murder conviction (supported by alternative theories, one of which was felony murder) and the conviction for CSC I (the predicate felony to the felony murder claim), he cannot prove prejudice for two reasons. First, the murder conviction was alternatively supported by premeditated murder. So, even if the felony murder conviction was improper, the murder conviction is separately and alternatively supported by the premeditated theory. Second, when "assessing ineffective assistance claims, we may not consider any objection that would be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission." *See Berry v. Capello*, 576 F. App'x 579, 589 (6th Cir. 2014) (quoting *Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014)) (internal quotation marks omitted).

In *Berry*, petitioner had been convicted of and sentenced for felony murder and the underlying predicate offense prior to the Michigan Supreme Court's decision in *Ream*. *Id.* at 581-83. In his federal habeas petition, he argued (relying on *People v. Wilder*), that his conviction and sentencing for both felony murder and the predicate offense violated his Double Jeopardy protections. *Id.* at 589. While petitioner's post-conviction litigation was pending, Michigan law changed when the Michigan Supreme Court issued the *Ream* decision, expressly overruling *Wilder*. *Id.* Relying on the Supreme Court's decision in *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993), the Sixth Circuit recognized that counsel's failure to make an objection that would be

meritless under current governing law could not support an ineffective assistance of counsel claim—even if the objection would have been meritorious if raised at the time. *Id.* The Sixth Circuit rejected petitioner's claim, noting that "[b]ecause Berry could not assert a double jeopardy claim under current Michigan law, we 'may not consider the effect of such now-void objections' in determining whether Berry was prejudiced by the performance of his trial and appellate counsel." *Id.* (quoting *Abby*, 742 F.3d at 228).

This is the exact situation here. When the underlying offenses occurred, *Wilder* was good law and so it appears that Wright could not be convicted of both felony murder and CSC I. However, the law changed prior to Wright's trial, and thus any objection on this basis is void, even if it could have been meritorious if actually raised during the hearing. Therefore, Wright's counsel was not ineffective for failing to raise this issue on appeal.

### vi.    Wright's remaining ineffective assistance of counsel claims.

In his Amended Petition, Wright identifies several specific ineffective assistance of trial counsel claims, which are addressed above. But he also incorporates the claims raised in his Motion for Relief from Judgment, which include two additional arguments. First, he argues that counsel was ineffective for raising the issue of Comela Leonard commenting on his guilt in front of the jury. Second, he argues that counsel was ineffective for failing to develop issues with the ballistic evidence which allegedly suggested that two weapons were involved in the underlying events. As discussed below, both arguments are without merit, and so appellate counsel was not ineffective for not raising them on appeal.

First, neither counsel erred as it pertains to Comela Leonard's commenting on Wright's guilt in front of the jury. From the Court's review of the testimony, it does not appear that any of Ms. Leonard's testimony rises to the level of an error. Although Ms. Leonard did speak directly

to Wright during her testimony, the Court immediately intervened and directed her responses to counsel.  Thus, there was nothing further for trial counsel to object to, and similarly, there was no error for appellate counsel to raise on appeal.

Second, counsel's decision not to explore the alleged ballistic evidence was not deficient. Wright contends that "[t]rial [c]ounsel failed to develop issues with balistic [sic] evidence that two (2) weapons were involved by virtue of different bullets being recovered."  (Doc. 15-16 at 7.) Wright offers no further development of this argument, and so the Court has no guidance as to exactly what Wright contends.

From its review of the trial transcript, the Court assumes Wright's argument arises from the testimony of the ballistics expert offered at trial.  (*See* 15-9 at 143-83.)  During this testimony, the expert examined the ballistic evidence recovered from the scene and opined as to the caliber of the bullets and whether the rounds were fired from the same weapon.  (*See id.*)  The expert examined the two bullets removed from Wright's victims and confirmed they were fired from the same weapon.  (*See id.* at 156, 163-64.)  He also identified the bullets as ".38 Special/.357 Magnum caliber," and then explained that "a .357 Magnum is a .38 Special Magnum."  (*Id.* at 156.)  While the expert did acknowledge that one of the recovered bullet was a different manufacturer than the other bullets and was always only a .38 Special, and never a .357, he indicated that it "could have been fired from the same weapon" but that he could not say definitively because the bullet was damaged (because it had been fired) and it was a lead, rather than jacketed bullet.  (*See id.* at 170.) He further testified that it was caliber-consistent, (*id.*), and that it is not unusual to see a variety of ammunition in a case, as people sometimes use a variety of ammunition (*id.* at 177).

Although the expert mentions two calibers of weapons, his further testimony confirms that the terms are synonymous.  So, contrary to Wright's argument, there were not two different caliber

of bullets found. Even if the expert's initial testimony could be construed as suggesting two weapons were involved, he clearly clarified that there was likely only one weapon involved. There appears to be little—if any—support for Wright's argument, and so appellate counsel was not ineffective for failing to raise this issue on appeal, as it is not clearly stronger than the issues he did raise.

> **b.** **Wright's remaining arguments are similarly without merit and so appellate counsel did not err in refusing to raise them on appeal.**

Wright lists several other ways in which his trial was compromised and issues which counsel should have raised on appeal, including alleged errors in the felony murder jury instructions; that he was denied a fair trial because the prosecutor used leading questions and one of the witnesses was allegedly in the courtroom in violation of the sequestration order; denied due process because volume II of the preliminary exam transcript was never produced; denied access to the record; and denied his right to confrontation when the medical examiner who testified was not the examiner who authored the report or conducted the autopsy.[9] Wright does not develop any of these arguments, nor does he provide evidence to support the underlying facts he claims (for example that the evidence/transcripts were never produced), and so it is not clear that counsel's performance was deficient.

Regardless, Wright certainly cannot prove prejudice, as none of these arguments are stronger than those presented by appellate counsel. It cannot be forgotten that appellate counsel has substantial discretion to decide the strongest arguments to put forth. *See Murray*, 477 U.S. at

---

[9] Wright addresses this claim in detail in his reply brief. Although the claim itself is procedurally defaulted for the reasons discussed in Section C below, the Court has independently reviewed this claim through the lens of an ineffective assistance of appellate counsel claim and has concluded that it is not clear that any Confrontation Clause violation occurred. *See Ramsey v. Curtin*, No. 11-1412, (May 9, 2012) (noting that the Supreme Court has not clearly established that an autopsy report is testimonial, thus invoking the protections of the Constitution).

536. None of these other issues, even if true, would likely have merited a reversal at the appellate level. Thus, Wright cannot show that appellate counsel was ineffective.

**C.      Wright Procedurally Defaulted His Remaining Claims (Claims 3 and 6).**

Respondent argues that Wright's claims of ineffective assistance of trial counsel and improper jury instructions are procedurally defaulted and are therefore not properly before this Court. For the reasons that follow, the Court agrees and thus will not consider the merits of Wright's claims.

The general rule is that a federal court will not conduct habeas review of any "procedurally defaulted" claims. A procedural default occurs when the state courts refused to consider a petitioner's claims because he failed to comply with state procedural rules, and the basis for the state law decision is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Lee v. Kemna*, 534 U.S. 362, 375 (2002).

So, the doctrine of procedural default applies when: (1) the petitioner failed to comply with a state procedural rule, (2) the state court actually relied upon this procedural rule in denying the requested relief, and (3) the procedural rule is an "adequate and independent" state ground for denying review of the federal constitutional claim. *Stokes v. Scutt*, 527 F. App'x 358, 363 (6th Cir. 2013). When these elements are met, federal habeas review is precluded, unless a petitioner can satisfy the "cause and prejudice" test or can show actual innocence. *See id.*

To determine whether the above elements are met, and specifically whether the state courts actually relied on the procedural rule in refusing a petitioner's claim, a federal court must evaluate the state courts' reasons for refusing to consider a petitioner's claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). To accomplish this task, the federal district court must review the "last

reasoned decision" of the state courts. *Id.*; *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010). The Sixth Circuit has concluded that, when the Michigan appellate courts deny leave to appeal citing Michigan Court Rule 6.508(D), such orders are "unexplained," and thus do not constitute the "last reasoned decisions" of the state courts. *Guilmette*, 624 F.3d at 291-92. So, the federal district court must "look through" those orders to the "last reasoned decision" of the state courts. *See id.*

In this case, both the Michigan Court of Appeals and Supreme Court denied Wright's application for leave to appeal citing Michigan Court Rule 6.508(D). (Doc. 15-19 at 1; Doc. 15-20 at 1.) Accordingly, this Court must "look through" these orders and examine the trial court's decision denying Wright's Motion for Relief from Judgment, which constitutes the "last reasoned decision" of the state courts, to determine whether Wright's claims are procedurally defaulted. *Guilmette*, 624 F.3d at 291-92.

All three elements necessary to establish procedural default occurred in this case. First, there can be no dispute that Wright did not raise Claims 3 and 6 on direct appeal. Instead, he first raised them in his Motion for Relief from Judgment. Under Michigan Court Rule 6.508(D)(3), a defendant must establish entitlement to the relief requested, and it prohibits relief on grounds that could have been raised on appeal from the conviction unless a defendant shows good cause for his failure to raise the claims on appeal and actual prejudice from the "alleged irregularities" supporting his claim for relief. Thus, Wright failed to comply with this Michigan procedural rule.

Second, the trial court invoked a procedural rule to deny Wright the relief he sought— Michigan Court Rule 6.508(D)(3). The June 15, 2012 order issued by the trial court acknowledged each of Wright's claims and then noted that, before the court could consider the merits of Wright's claims, "Defendant must first establish his entitlement to relief, pursuant to MCR 6.508(D)(3)…."

(Doc. 15-18 at 2.)  That court then recognized that "[t]he grounds upon which [Wright] requests relief could have been raised on direct appeal, and thus, he must establish 'good cause' for failure to raise such grounds and 'actual prejudice' from the 'alleged irregularities' that support his claim." (*Id.*)  The court analyzed and rejected Wright's arguments of cause and prejudice.  (*Id.* at 3-5.) That court concluded its opinion by stating "[w]ithout proof that [appellate] counsel rendered ineffective assistance, defendant's argument fails to establish 'good cause,' pursuant to MCR 6.508(D)(3)." (*Id.* at 5.)  That court denied Wright's motion, never reaching the merits of Wright's claims raised in his motion.  (*Id.*)  Therefore, the state court's last reasoned decision denied relief because Wright failed to comply with the state procedural rule.

Finally, the Sixth Circuit has recognized that Michigan Court Rule 6.508(D)(3) is an independent and adequate state ground for purposes of the procedural default doctrine.  *Stokes*, 527 F. App'x at 363.

Because all elements of procedural default have been satisfied, this Court is barred from conducting habeas review of Wright's claims unless he can show cause and prejudice or actual innocence.  *See Rogers v. Bell*, No. 1:07-cv-783, 2011 WL 3348077, at *2 (W.D. Mich. Mar. 23, 2011) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)), *report and recommendation adopted*, 2011 WL 3348073 (W.D. Mich. July 29, 2011).  Wright cannot satisfy either of these options.

First, Wright cannot show "cause" for his procedural failures in the state courts.  "The 'cause' standard in procedural-default cases requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise a claim in the state courts." *Stokes*, 527 F. App'x at 367 (internal quotations and citations omitted).  "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel,

or a showing of a factual or legal basis for a claim that was not reasonably available." *Id.* (internal quotations and citations omitted).

Wright does not directly address Respondent's procedural default arguments in his reply brief. Presumably, he would continue to rely on his ineffective assistance of appellate counsel claims to show the requisite "cause" to excuse the procedural default. But as discussed above at length, this argument fails. And, because Wright cannot satisfy the "good cause" standard, the Court need not address the "prejudice" prong of this test. *See id.*

Furthermore, Wright cannot show that he is actually innocent, and thus a fundamental miscarriage of justice will occur if the Court does not consider and decide his federal habeas claims. *Schlup v. Delo*, 513 U.S. 298, 322 (1995). To employ this very narrow exception, Wright must show actual *factual* innocence, and a claim of actual innocence must be supported with "new reliable evidence—exculpatory scientific evidence, trustworthy eyewitness account testimony, or critical physical evidence—that was not presented at trial." *Roe v. Woods*, No. 2:10-cv-7, 2013 WL 868868, at *9 (W.D. Mich. Mar. 7, 2013) (citing *Schlup*, 513 U.S. at 324). Wright does not attempt to make such a showing.

Therefore, Wright has procedurally defaulted Claims 3 and 6, and this Court will not analyze their merits.

**D.      Wright's Additional Requests for an Evidentiary Hearing and Appointment of Counsel Shall Be Denied.**

In his Petition, Wright asks for an evidentiary hearing, not before this Court, but rather before the state court. (*See* Doc. 13 at 9) ("Mr. Wright humbly prays the Court will stay the proceedings and remand this matter to the Wayne Circuit Court with explicit instructions to conduct appropriate hearings."). Wright contends that, although he has requested an evidentiary hearing from the state courts, he has yet to receive one. However, this Court notes that Wright has

exhausted his claims before the Michigan state courts, and the Michigan Court of Appeals denied majority of his claim because of his procedural noncompliance with Michigan Court Rule 6.508(D)(3). Thus, no hearing was needed. Moreover, Wright does not explain in any detail why he claims a hearing is necessary. As the above analysis shows, Wright's claims are without merit, and there is no need to factually develop the record. Accordingly, Wright's request for an evidentiary hearing will be denied. For similar reasons, his request that counsel shall also be denied.

**E.      Certificate of Appealability Shall Not Issue.**

A district court must decide whether a certificate of appealability ("COA") should issue when it enters a judgment adverse to a petitioner. Rules Governing 2254 Cases, Rule 11(a). A COA should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court has rejected a petitioner's claims on the merits, the requisite substantial showing is satisfied when the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a court has denied the claims on procedural grounds, without analyzing the underlying constitutional claims, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, none of Wright's claims warrant the issuance of a COA. This Court has decided three of Wright's claims on the merits: Claims 1, 2, and 7. As demonstrated in the Court's analysis above, Wright has failed to demonstrate even a debatable constitutional violation. Reasonable

jurists would not conclude that Wright's confession was involuntary, his Double Jeopardy rights were violated, or that he received ineffective assistance from his appellate counsel.

This Court also decided several claims on procedural grounds: Claims 3 and 6. Wright similarly cannot show either that a constitutional violation occurred to support any of these claims or that the Court's procedural ruling was arguably incorrect. The Michigan Court of Appeals unambiguously relied on a procedural ground—Wright's failure to satisfy Michigan Court Rule 6.508(D)(3). Because this is an adequate and independent state ground, these claims are undoubtedly procedurally defaulted.

Therefore, this Court will not issue a COA.

## CONCLUSION

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that Wright's Petition for Writ of Habeas Corpus, including Wright's request for remand to the state court for an evidentiary hearing and for appointment of counsel, be, and is hereby, **DENIED WITH PREJUDICE**, and a Certificate of Appealability be **DENIED**. A separate judgment shall enter in favor of Respondent concurrently herewith.

Dated this 25th day of May, 2018.



Signed By:

*William O. Bertelsman* WOB

United States District Judge